# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR SANCHEZ,<br><br>　　　　Petitioner,<br><br>　v.<br><br>DERRAL G. ADAMS, Warden,<br><br>　　　　Respondent. | 1:09-cv-00014 JMD (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

On May 25, 2007, a jury convicted Petitioner of robbery (count one) and recklessly evading a peace officer in a motor vehicle (count two). (Lodged Doc. 3, 2.) The jury found a gun enhancement to be true as to count one. Id. On June 21, 2007, the trial court sentenced Petitioner to the upper term of five years on count one and consecutive terms of ten years for the gun use enhancement and eight months for count two. Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District, alleging that the California Determinate Sentencing Law (DSL) pursuant to which the upper term on count one was issued was an unconstitutional ex post facto law. Id. In a reasoned decision, the appellate court

U.S. District Court
E. D. California

1

affirmed the trial court's judgment, finding that "a defendant's criminal history can be used by a court in sentencing a defendant without violating the defendant's right to a jury trial." Id. at 5. The appellate court further found that, even though Petitioner's offense occurred before the amended law in question took effect, the imposition of the upper term constituted neither an ex post facto nor a due process violation. Id.

Petitioner filed a petition for review in the Supreme Court of California, which was denied without comment on July 23, 2008. (Lodged Doc. 10.)

Petitioner filed the instant petition with the U.S. District Court on January 5, 2009. (Doc. #1.) Respondent filed an answer on June 4, 2009 (Doc. #14), to which Petitioner filed a traverse on August 10, 2009. (Doc. #17.)

On January 15, 2009, Petitioner consented, pursuant to Title 18 U.S.C. § 636(c)(1), to have a magistrate judge conduct all further proceedings, including entry of the final judgment. (Doc. #3.) On April 15, 2009, Respondent also consented to the jurisdiction of a magistrate judge. (Doc. #9.)

A consent order reassigning the case for all purposes to a magistrate judge was issued on December 29, 2009. (Doc. #18.) On April 28, 2010, the case was reassigned to the undersigned. (Doc. #21.)

## FACTUAL BACKGROUND [1]

On February 23, 2007, Jaswant Kaur was working at Freeway Express Mart just south of Mettler on Highway 99. Sanchez came into the store, handed Kaur $20 to purchase gasoline, went out to a red van, and pumped it with gasoline. Sanchez returned to the store, pulled out a gun, and told Kaur: "Open the register. Otherwise I [will] kill you." Kaur, who was very scared, could not open the register. She told Sanchez the register would only open when she registered a sale.

Kaur offered Sanchez $300 in change money that was lying in another box outside the register. Sanchez came inside the counter, stood next to Kaur, pointed his gun at Kaur, and told her to give him the money because he would kill her. Sanchez took all of the currency from the change box except for one $20 bill. Kaur watched Sanchez leave in the van and wrote down the license plate number. Kaur then called the police. Kaur later identified Sanchez to the police after they arrested him.

Kern County Sheriff's Deputy William Hinkle heard a dispatch concerning the robbery at 5:30 p.m. The report described the robber as driving a red van and included

---

[1] The Factual Background is derived from the factual summary set forth by the California Court of Appeal, Fifth Appellate District, in its opinion of May 7, 2008, and are presumed correct pursuant to 28 U.S.C. §§ 2254(d)(2), (e)(1). People v. Sanchez, No. F053220, 2008 WL 1961160, at *1-2 (Cal. Ct. App. May 7, 2008); (Lodged Doc. 3, 2-4).

a partial license plate number. About two minutes later, Hinkle saw a red van traveling south on Interstate 5 at a high rate of speed and recklessly changing lanes. It took Hinkle over a mile to catch up with the van. The license plate was almost an exact match to the description from the dispatch.

Sanchez made a furtive motion that concerned Hinkle, who thought Sanchez may have been reaching for a gun. Hinkle did not immediately activate his red lights and followed Sanchez nine or ten miles. The dispatcher informed Hinkle that California Highway Patrol (CHP) units would be waiting at the Smokey Bear Road to assist him. Sanchez slowed then accelerated to 115 miles per hour. Hinkle activated his red lights and siren. Two miles past Smokey Road, a CHP car joined Hinkle in the chase.

Hinkle was joined by CHP Officer Pablo Castaneda. Hinkle's red lights and siren were in operation when Castaneda joined the chase. Castaneda also activated his lights and siren. Another CHP officer arrived. Sanchez drove erratically when approaching slower traffic, changing lanes without using his turn signal. Sanchez used the shoulder at one point. Castaneda left the chase after some 25 to 28 miles.

Officer Ryan Patrick of the CHP was following Sanchez when Sanchez exited the freeway at Calgrove Boulevard. Sanchez was traveling at 100 miles per hour. Midway down the exit ramp, Sanchez locked his brakes, skidding about 400 feet toward a stop sign and he almost hit another vehicle. Sanchez went through the intersection without stopping at approximately 35 miles per hour. Once on Calgrove Boulevard, Sanchez accelerated to 80 miles per hour. At the intersection with Old Road, Sanchez turned and accelerated to 80 miles per hour.

Old Road turned into San Fernando Road. Sanchez continued traveling south on San Fernando Road. At the intersection of Balboa Road, Sanchez went over a double yellow line to move around stopped traffic, actually traveling in the northbound land, and then accelerated through a green light to about 90 miles per hour. Sanchez turned west onto Hubbard Street. Although Sanchez slowed down through intersections, he was driving at 80 miles per hour. The speed limit was no more than 55 miles per hour.

Sanchez eventually slowed to 20 miles per hour to turn onto Aztec into a residential neighborhood. After 300 yards, Sanchez slowed to 15 miles per hour and jumped out of his van. The van continued moving at 10 to 15 miles per hour until it went over a sidewalk and collided with a tree in front of a house. Sanchez ran through a yard until Patrick forcibly subdued him with other officers. After his arrest, an officer searched Sanchez and found money totaling $214.71, which included $109 in dollar bills.

(Lodged Doc. 3, 2-4.)

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

Constitution. In addition, the conviction in question arose out of a judgment by the Kern County Superior Court (Answer, 8), which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), overruled on other grounds by Lindh, 521 U.S. 320 (1997)) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the AEDPA. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that the federal habeas court give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption

that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a state procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Id.

Here, the California Court of Appeal, and the California Supreme Court both adjudicated Petitioner's claims. As the California Supreme Court issued a summary denial of Petitioner's claims, the Court "look[s] through" that court's decision to the last reasoned decision; namely, that of the appellate court. See Ylst v. Nunnemaker, 501 U.S. at 804.

**III.  Review of Petitioner's Claims**

Petitioner contends that the trial court's imposition of the upper terms violated his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process of the law.[2] (Pet., 4.)

Sixth Amendment

Petitioner's Sixth Amendment argument stems from the clearly established federal law derived from Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny. In Apprendi, the United States Supreme Court overturned a State sentencing scheme as violative of a criminal defendant's right to have a jury verdict based on proof beyond reasonable doubt. The sentencing scheme permitted a trial judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon a finding by a preponderance of the evidence that the defendant committed the crime

---

[2] The United States Supreme Court has previously stated that, "the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Jones v. United States, 526 U.S. 227, 246 n. 6) (1999). In Apprendi v. New Jersey, 530 U.S. 466, 475 (2000), the Supreme Court recognized that "[t]he Fourteenth Amendment commands the same answer."

U.S. District Court
E. D. California                                6

with racial animus.  Id. at 469.  The Supreme Court held that the Sixth Amendment right to a jury trial required that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.  In Blakely v. Washington, 542 U.S. 296, 303-304 (2004), the high court explained that the "statutory maximum" is the maximum sentence a judge may impose based exclusively on the facts reflected in the jury verdict or admitted by the defendant and not the maximum sentence a judge may impose after finding additional facts.

Petitioner claims that, pursuant to Cunningham v. California, 549 U.S. 270 (2007), there is a federal "'bright-line rule' that only facts found true by a jury beyond a reasonable doubt may form the basis of a sentence in a criminal case." (Pet., 13.)  In Cunningham, the high court found the DSL to violate the Sixth Amendment because it "authorizes the judge, and not the jury, to find the facts permitting an upper term sentence." Id. at 293.  However, the court went on to invite California to adjust the sentencing scheme and noted that "several States have modified their systems in the wake of Apprendi and Blakely to retain determinate sentencing.  They have done so by calling upon the jury. . . . to find any fact necessary to the imposition of an elevated sentence." Id. at 293-94.  The California Supreme Court met the high court's challenge in People v. Black, 41 Cal.4th 799 (2007), holding that:

> as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of Apprendi and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to a jury trial.

Black, 41 Cal.4th at 812 (emphasis in original).

In affirming the imposition of the upper term, the appellate court noted "the [trial] court found [Petitioner]'s performance on probation was unsatisfactory because he violated the conditions of probation and reoffended. [Footnote omitted.] The court found the aggravating factors outweighed the nonexistent mitigating factors and imposed the upper term on count one." The Probation Officer's report confirms that Petitioner was on "two separate misdemeanor grants of probation when the crime was committed." (Probation Officer's Report, 8, June 21, 2007; Lodged Doc. 11.) The appellate court went on to hold that "a defendant's criminal history can be used by a court in

sentencing a defendant without violating the defendant's right to a jury trial." (Lodged Doc. 3, 5 (citing Black, 41 Cal.4th at 818-820).) The appellate court's reliance on Black is not an unreasonable application of Supreme Court law in that Black modified the DSL to comport with the Sixth Amendment limitations addressed in Cunningham. Because the trial court relied on Petitioner's criminal history as the aggravating factor, its imposition of the upper term did not violate Petitioner's Constitutional rights.

Petitioner argues that the aggravating factors relied on by the trial court were not the fact of his prior convictions but the conduct subsequent to those convictions, which was never presented at trial. (Pet., 5.) Petitioner asserts that, because his performance on probation was never admitted to a jury to be found true beyond a reasonable doubt, the use of those facts by the judge to impose the upper term violates the Sixth Amendment. The Supreme Court has consistently recognized that prior convictions are an exception to the Apprendi and Blakely rule that a jury must find any factor that increases Petitioner's sentence beyond the statutory maximum. See Almendarez-Torres v. United States, 523 U.S. 224, 247 (1998); see also Blakely, 542 U.S. at 301; see also Cunningham, 549 U.S. at 288. While the Ninth Circuit has held that "the fact of being on probation at the time of a crime does not come within the 'prior conviction' exception", it has also maintained that this Ninth Circuit rule does not constitute "clearly established federal law" for AEDPA purposes and notes that several other circuits have held that probationary status does fall within the prior conviction exception. Kessee v. Mendoza-Powers, 574 F.3d 675, 678 (2009) (quoting Butler v. Curry, 528 F.3d, 624, 647 (2008)). Thus, the appellate court's affirmation of the trial court's reliance on Petitioner's probationary status as an aggravating factor is not an objectively unreasonable application of the clearly established 'prior conviction' exception as set forth by the Supreme Court in Almendarez-Torres, 523 U.S. at 247.

Ex Post Facto and Due Process

Finally, the appellate court held that the imposition of the upper term was not an ex post facto or a due process violation. (Lodged. Doc. 3, 5 (citing People v. Sandoval, 41 Cal.4th 852, 855 (2007).) Petitioner claims that between the date he committed his crime and the date he was sentenced, the DSL was amended to change the statutory maximum from the presumptive middle

term to the upper term. (Pet., 16.)

Article I, § 10 of the U.S. Constitution provides: "No State shall ... pass any ... ex post facto law." The Ex Post Facto Clause prohibits the states from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981), (quoting Cummings v. Missouri, 71 U.S. 277, 325-26 (1866)). "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some sort of 'disadvantage,' ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." California Dep't of Corrections v. Morales, 514 U.S. 499, 506 n.3 (1995). "A law does not violate the clause if it 'created only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes.'" Brown v. Palmateer, 379 F.3d 1089, 1093 (9th Cir. 2004) (quoting Morales, 514 U.S. at 513).

While the DSL may have changed which term was the statutory maximum, the law did not change the length of the sentence provided for under the middle term (three years) or the upper term (five years). Thus, regardless of whether Petitioner was sentenced to the upper term because it was the statutory maximum, or because his prior convictions elevated him from the middle term, he still would have received the upper term sentence of five years. As Petitioner's punishment would not have changed no matter under which version of the law he was sentenced, it was not objectively unreasonable under clearly established federal law for the appellate court to find that there was no ex post facto violation.

Petitioner also contends that fixing the alleged ex post facto violation though a "judicially crafted sentencing scheme" violates due process. As this Court found that Petitioner did not suffer from an ex post facto violation, the Court declines to address this issue.

**CONCLUSION**

For the reasons set forth above, Petitioner's claim that the trial court sentenced him to the upper term does not warrant habeas relief.

**CERTIFICATE OF APPEALABILITY**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>   (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DENIES Petitioner's

1  motion for certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1) the petition for a writ of habeas corpus be DENIED;

2) the Clerk of Court be DIRECTED to enter judgment in this matter; and

3) certificate of appealability is DENIED.

IT IS SO ORDERED.

**Dated:   April 30, 2010**              /s/ John M. Dixon
                                         UNITED STATES MAGISTRATE JUDGE